UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN R. OPSAHL,<br><br>      v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>                      Defendant. | CIVIL NO. 04-5070 RBL<br><br>REPORT AND RECOMMENDATION |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Magistrates Rule MJR 4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been fully briefed. After reviewing the record, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

FACTUAL AND PROCEDURAL BACKGROUND

Mr. Opsahl filed his application for Social Security disability benefits on April 3, 2000. He alleges disability beginning July 23, 1990 due to leg, back and shoulder injuries (Tr. 124) and depression (Tr. 144). His claim was denied initially and on reconsideration (Tr. 46-49, 51-53). A hearing before ALJ Bennett S. Engleman was held on January 4, 2002. On February 15, 2002, the

REPORT AND RECOMMENDATION - 1

ALJ issued a decision finding Mr. Opsahl disabled from January 24, 1990 to January 24, 1996, but not thereafter (Tr. 730-42).

On April 23, 2002 the Appeals Council, on its own motion, vacated and remanded the ALJ's partially favorable decision for further proceedings. (Tr. 743-46). The new hearing was held July 10, 2002 (Tr. 822-44). The ALJ issued a decision on December 9, 2002 denying Plaintiff benefits. (Tr. 22). Plaintiff requested review of the ALJ's decision on February 5, 2003, which was denied on June 30, 2003 (Tr. 11-14), and again on January 9, 2004 (Tr. 7-9). The ALJ's decision thus became the final decision of the Commissioner. Plaintiff timely filed this appeal pursuant to 42 U.S.C. §405(g).

## DISCUSSION

The Court may set aside the final decision of the Commissioner denying a claim for Social Security disability benefits when the findings are based on legal error or are not supported by substantial evidence in the record as a whole. 42 U.S.C. §405(g); Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). We consider the evidence as a whole, weighing both evidence that supports, and evidence that detracts from the Commissioner's conclusion. Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996).

Sequential Evaluation Process

The claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(3)(A) (1992); 20 C.F.R. §416.905.

REPORT AND RECOMMENDATION - 2

The Social Security regulations set out a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security regulations. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920 (2000).

The Administrative Law Judge's Findings

In this case, the ALJ found at steps 1-3 that: (1) Mr. Opsahl has not engaged in any substantial gainful activity since July 24, 1990; (2) he has medically severe impairments; and (3) his impairments do not meet or equal the listed impairment in the regulations; The ALJ then determined Plaintiff cannot perform his past relevant work, and has the residual functional capacity to perform a limited range of sedentary work.  At step five, the Commissioner determined that Mr. Opsahl could perform other work existing in significant numbers in the national economy.  (Tr. 40-41).

The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Plaintiff claims that in determining residual functional capacity, the ALJ failed to comply with 20 C.F.R. §404.1520a.        In evaluating Plaintiff's mental impairment, 20 C.F.R. §404.1520a requires the ALJ to evaluate Plaintiff's pertinent signs and symptoms and rate the degree of functional limitation resulting from the impairment in light of Plaintiff's  activities of daily living, social functioning,  concentration, persistence or pace, and episodes of decompensation.  20 C.F.R. §1520a(c); §416.920a(c).

The ALJ found that Plaintiff was restricted to sedentary work (Tr. 38; 41 finding 5), with lifting, standing and walking restrictions.  (Tr. 38).  The ALJ also found that Plaintiff experienced a moderate decrease in his ability to concentrate due to pain and mild depression with anxiety.  (Tr. 38; 41 finding 7).  The ALJ stated that Plaintiff was psychologically able to engage in activities of daily living, such as socializing with family and friends, taking vacation, engaging in activities with his partner, and interacting with his kids.  (Tr. 33).

The ALJ found "[t]here is no medical evidence Mr. Opsahl's cognitive functioning has been limited by depression or any other medically determinable mental impairment".  (Tr. 33).  He also

REPORT AND RECOMMENDATION - 3

stated, "evaluation of the impairment under the psychiatric review technique described in section 12 of Appendix 1 did not reveal functional limitation manifested at the degree required to meet severity ("B" or "C") criteria of section 12.02 or 12.04 of Appendix 1" (Tr. 33). The ALJ determined that Plaintiff's mental impairment was of insufficient severity to warrant a finding of disability.  As further discussed below, the ALJ's properly evaluated the medical evidence and his findings regarding plaintiff's alleged mental impairment(s) are supported by substantial evidence in the record.

<u>The ALJ Provided Specific and Legitimate Reasons for Rejecting Dr. Morgenstern's Opinion</u>

Plaintiff claims that the ALJ improperly rejected the December 1, 2001 opinion of Plaintiff's treating psychiatrist Alan Morgenstern that Plaintiff was prevented from working because of "persistent depressive symptoms and brief bouts of anger". (Tr. 720).

A treating physician's opinion is generally accorded greater weight than that of a non-treating or non-examining physician. <u>Magallanes</u>, 881 F.2d at 751.  A treating physician's opinion may be rejected only if the ALJ gives specific, legitimate reasons that are supported by substantial evidence. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995).

The ALJ discounted Dr. Morgenstern's December 2001 report because it conflicted with his own comments, and opinions in previous treatment records.  In progress notes from July 12, 2000 Morgenstern noted "the patient's mental status is relatively good while taking Wellbutrin, " and "Mr. Opsahl generally remains free of depression."  (Tr. 602, 709).  His December 1, 2000 report cited the benefits that Plaintiff was getting from the medication he was taking for his depression (Tr. 709).  The ALJ also cited Dr. Morgenstern's opinion that Plaintiff's depression might resolve once he became more productive in a work setting.  (Tr. 38).

The ALJ also found that the earlier reports were consistent with the progress notes and other information of record regarding the Plaintiff's activities. (Tr. 38).  Dr. Ronald Turco determined that Plaintiff was not suffering from significant psychiatric disturbance, and indicated that Plaintiff was

REPORT AND RECOMMENDATION - 4

1  malingering (Tr. 623). Dr. Guy Parvaresh determined that Plaintiff did not suffer from cognitive

2  dysfunction (Tr. 31). Neither felt Plaintiff's ability to work was significantly limited by a medically

3  determinable impairment during the time period at issue.

4        Plaintiff contends that when an ALJ is concerned about inconsistencies in a treating source's

5  opinion, the ALJ must recontact the treating physician to provide additional evidence or further

6  clarification. 20 C.F.R. §404.1512(s); SSR 96-5p. However, where the medical evidence

7  considered as a whole is adequate to make a disability determination, as it is here, the ALJ has no

8  duty to recontact a treating source for clarification. The ALJ properly resolved conflicts and

9  ambiguities in the medical evidence. The ALJ's reasons for rejecting Dr. Morgenstern's opinion

10 were specific and legitimate and supported by substantial evidence.

11 <u>The ALJ Properly Evaluated Plaintiff's Credibility Regarding Symptoms</u>

12       Plaintiff claims the ALJ improperly rejected his testimony regarding symptoms of

13 dizziness, sleepiness, decreased energy and need to rest during the day. (Pl. Brief at 15). The ALJ

14 determined that Plaintiff's symptoms were contrary to the medical reports of record and not fully

15 credible (Tr 35).

16       To reject a claimant's subjective complaints, the ALJ must provide specific, cogent reasons

17 for the disbelief. <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 599

18 (9th Cir. 1999). The ALJ must make a credibility determination specifically identifying which

19 testimony is believable, and which testimony undermines the claimant's complaints. <u>Lester v. Chater</u>,

20 81 F.3d 821, 834 (9th Cir. 1995).

21       The ALJ relied on treatment reports that plaintiff's physical impairments had stabilized during

22 the relevant period; Plaintiff's treating physician believed that Plaintiff could do work other than

23 longshoring (Tr. 573); and Plaintiff had demonstrated the ability to perform sedentary exertional

24 work and a narrow range of light work during a physical capacities evaluation in September 1994.

25 (Tr. 35-36).

26 REPORT AND RECOMMENDATION - 5

1    The ALJ rejected Plaintiffs complaints of disabling depression because treatment reports
2 generally show Plaintiff's depression to be well-controlled by medication. (Tr. 36, 678-81). The ALJ
3 relied on the Dr. Parvaresh's evaluation of Plaintiff's MMPI, which indicated that Plaintiff had a
4 tendency to overstate his symptoms. (Tr. 37). The ALJ also noted the opinion of psychiatrist
5 Ronald N. Turco, who stated that Plaintiff was not motivated for employment or rehabilitation, and
6 his MMPI indicated malingering (Tr. 30, 623). The ALJ gave clear and convincing reasons
7 supported by substantial evidence for finding Plaintiff's testimony regarding his physical and mental
8 limitations not fully credible.

9    Plaintiff asserts that if an ALJ cannot ascertain a basis for a treating source's opinion from the
10 record, the ALJ is required to recontact the treating physician. Plaintiff's citation to 20 C.F.R.
11 §404.1512(s), SSR 96-5p. is probably intended as a reference to 20 C.F.R. §404.1512(e), which
12 requires recontacting medical sources "when the evidence we receive from [the] medical source is
13 inadequate for us to determine whether you are disabled".

14   The medical evidence, when considered as a whole, was adequate to make a determination
15 whether or not Plaintiff was disabled. Therefore, there is no need to remand for the ALJ to recontact
16 Dr. Morgenstern to resolve "inconsistencies" in his report and determine the basis for his opinion.
17 (Pl. Brief at 14).

18 <u>Assessment of Physical Therapist's Report in Determining Residual Functional Capacity</u>

19   Plaintiff asserts that the ALJ's failure to acknowledge and present to the Vocational Expert
20 all limitations identified in the physical evaluation report of Katharine Thayer is reversible error. (Tr.
21 713-14).

22   In arriving at Plaintiff's residual functional capacity, the ALJ stated the following:

23 "In reaching findings regarding limitations resulting from the claimant's physical
   impairments during the period at issue, most weight has been given to Ms. Thayer's
24 report and consi[s]tent assessments reported by treating doctors in 1995 and 1996
   following the claimant's recovery from additional injuries to his shoulder and ribs."
25

26 REPORT AND RECOMMENDATION - 6

1 (Tr. 37).  Thus, contrary to Plaintiff's assertion, the ALJ did not rely solely on Thayer's report, but considered the opinions of Plaintiff's treating doctors.

The ALJ's assessment of Plaintiff's exertional limitations regarding sedentary work, lifting, standing and walking was substantially consistent with Ms. Thayer's opinion.  (Tr. 38, 41). The limitations not included in the hypothetical posed to the vocational expert were Ms. Thayer's opinion that Plaintiff should avoid repetitive use or prolonged postures of the right shoulder; should avoid sitting for more than 1 hour continuously, and that he will need to pace himself carefully during exertional activities and take frequent breaks at least every 10 minutes. (Tr. 713-714).

The consistent medical evidence shows that Plaintiff's leg and shoulder impairments had stabilized during the disability period under consideration. The hypothetical presented by the ALJ to the VE assumed an individual "not required to walk or be on his feet, that his job is primarily seated." (Tr. 834).  The VE's responses to the ALJ's questions also allowed for sitting and standing as a postural change.  (Tr. 835).  Plaintiff's need for rest periods, and need to pace himself during exertional activities and take frequent breaks every ten minutes is based on Plaintiff's testimony, which the ALJ deemed not fully credible.

The ALJ is not obligated to accept all of a claimant's proposed limitations, as long as the ALJ's findings are supported by substantial evidence.  See Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001). The hypothetical posed to the VE accounted for all of Plaintiff's limitations that were supported by substantial evidence.

Step Five: Other Work Existing in the National Economy/The Vocational Expert's Testimony

Plaintiff argues that the vocational expert's responses to the ALJ's hypothetical does not prove that significant jobs exist in the national economy that Plaintiff can perform.

The hypothetical posed to the vocational expert assumed an individual of Plaintiff's age, education and work background, with a  capacity for sedentary work and a moderate decrease in concentration.  The VE's responses indicated that such an individual could perform 800,000

REPORT AND RECOMMENDATION - 7

assembler jobs after a 50% reduction for standing/walking restrictions (Tr. 834-835), but any limitation in concentration above the mild range would impair an individual's ability to perform that job. (Tr. 837). Specifically, she testified that assembly was not a "viable vocational goal for an individual with a moderate level of impairment, such as Plaintiff. (Tr. 838).

The Vocational Expert also testified that 1,750,000 cashier jobs existed in the national economy that Plaintiff could perform with the exertional limitations, but that those numbers would be further reduced in the case of an individual with a moderate impairment in concentration. (Tr. 838). The ALJ asked how much further, to which the Vocational Expert responded, "significantly...I think you'd probably be looking at less than maybe 20 percent of those and that may be generous". (Tr. 838).

Contrary to Plaintiff's assertion that the ALJ did not include limitations to standing and walking in his hypothetical, the hypothetical presented to the Vocational Expert assumed an individual "not required to walk or be on his feet, that his job is primarily seated", and allowed for sitting and standing as a postural change. (Tr. 834-35). The hypothetical posed to the Vocational Expert included limitations that were supported by substantial evidence.

<u>Effect of Mr. Opsahl' borderline age on a finding of disability</u>

Plaintiff argues that the ALJ erred in finding him not disabled without considering whether his age category directed a finding of disability under the medical-vocational guidelines.

A borderline situation exists when a claimant is within a few days to a few months of reaching an older age category. <u>Daniels v. Apfel</u>, 154 F.2d 1129, 1133 (10th Cir. 1988). When a claimant falls within a borderline, the Commissioner is precluded from mechanically applying the age categories in relying on the "Grids" to determine whether a claimant is disabled. 20 C.F.R. §404.1563(b).

On his date last insured of March 31, 1997 Plaintiff was four months and one week shy of his 50th birthday. Rather than applying the "Grids", the ALJ properly relied on a Vocational Expert's testimony to determine Plaintiff's ability to work.

REPORT AND RECOMMENDATION - 8

CONCLUSION

Based on the foregoing, the decision of the Commissioner should be AFFIRMED. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **April 1, 2005**, as noted in the caption.

DATED this 7th day of March, 2005.

/s/ J. Kelley Arnold
J. Kelley Arnold
U.S. Magistrate Judge

REPORT AND RECOMMENDATION - 9